IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LIBERTY NATIONAL LIFE INSURANCE COMPANY,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) Civil Action No. 24-00384-KD-MU |
| **JERRY TANNER GANN, and FNMN, LLC,** | ) ) ) ) |
| **Defendants.** | ) ) |

## ORDER

This action is before the Court on Plaintiff Liberty National Life Insurance Company's motion for leave to amend complaint (doc. 32), Defendant Jerry Tanner Gann's response (doc. 34) and Liberty's reply (doc. 40). Upon consideration, and for the reasons set forth herein, the motion is **GRANTED.**

Accordingly, **Liberty** shall file its **First Amended Complaint** on or before **October 21, 2025**, and **Gann** shall answer or otherwise respond on or before **November 4, 2025.** The newly added **Defendant FNMN LLC, shall answer or otherwise respond as provided in Fed. R. Civ. P. 12(a)** ("Time to Serve a Responsive Pleading. (1) In General. Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint").

I. Background

Gann was an "insurance agent contracted with [Liberty] as an Independent Agency Director" from April 2022 until his separation in May of 2024 (doc. 1). Liberty alleges that

Gann violated his contract by soliciting, etc., Liberty's customers and policyholders. Liberty alleges that Gann used Globe Life business cards, the parent company of Liberty, to solicit business and then tried to replace Liberty benefits "with products from a different, competing carrier." (Id.). Liberty also alleges that Gann engaged in false advertising in violation of the Lanham Act. Liberty brought Count One for injunctive relief, Count Two for breach of contract, and Count Three for Lanham Act violations. The Complaint was filed in October 2024.

Liberty now moves for leave to amend the Complaint to add a new claim against Gann, to add a new defendant FNMN, LLC (a limited liability company for which Gann is the sole member), and to add a claim against FNMN (doc. 32). Liberty also seeks to eliminate Count One based upon the Court's dismissal of the claim for injunctive relief (doc. 15). The proposed First Amended Complaint contains Count One against Gann for breach of contract, Count Two against Gann for violations of the Lanham Act, and Count Three against Gann and FNMN for tortious interference with business relationships or contracts (doc. 32-1).

Gann opposes the motion in part (doc. 34). He opposes the addition of FNMN and the claim against it on grounds that Liberty has acted in bad faith and that allowing the amendment would be futile.

II. Analysis

At this stage in the litigation, and absent Gann's written consent, Rule 15(a)(2) instructs the Court that it "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[.]" City of Miami v. Bank of America Corp., 800 F.3d 1262, 1286 (11th Cir. 2015) (citation omitted). The Court "may consider several factors when deciding whether to grant a motion to amend, including 'undue delay, bad faith or

dilatory motive [on the part of the movant], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340–1341 (11th Cir. 2014) (citing Equity Lifestyle Properties, Inc. v. Florida Mowing & Landscape Services, Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

Weighing in favor of granting leave to amend, Liberty's motion was timely filed pursuant to the Court's Order (doc. 30). Also in favor, the docket does not indicate that Liberty engaged in any undue delay, exhibited a dilatory motive, or repeatedly failed to cure deficiencies. Moreover, discovery does not close until January 16, 2026. Sufficient time exists to conduct discovery on the newly added claim and Defendant FNMN such that there does not appear to be any prejudice to Gann should the motion be granted. However, Gann argues that Liberty is acting in bad faith and that allowing the amendment as to FNMN would be futile

A. Bad faith

Gann argues that Liberty acted in bad faith by alleging that FNMN solicited Liberty's business customers before FNMN was formed (doc. 34). He points out that when the original Complaint was filed in October 2024, Liberty alleged that he had previously improperly solicited business from five specific entities. He points out that Count Three of the proposed First Amended Complaint as to FNMN is based on allegations of this same conduct. However, Gann states that FNMN was not formed until March 2025. From this, he argues that FNMN could not have engaged in tortious interference before it was formed. Therefore, the amendment to add FNMN is for "improper purposes" and "retribution against Mr. Gann's new business".

Liberty argues that Count Three also relies upon conduct that occurred after FNMN was

formed and therefore, it has not acted in bad faith (doc. 40).  Liberty explains that the original Complaint alleged that Gann solicited its "employer or worksite customers", but in the proposed First Amended Complaint it alleges in Count Three that "FNMN has intentionally, wrongfully, and unjustifiably interfered with [Liberty's] business relationships and contracts with its worksite program employers and their employees, as well as with [Liberty's] policyholders, insureds, contract holders, and certificate holders." (doc. 32-1, p. 13).  Liberty argues: "This means that even though Gann may have originally solicited some of [its] customers (i.e., the policyholders) before FNMN was formed, the individuals employed by those businesses (i.e., the insureds) were solicited later" by Gann and FNMN (doc. 40).

"'Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage.'" Honea v. City of Lawrenceville, No. 1:23-CV-1070-SEG-CMS, 2024 WL 5701786, at *5 (N.D. Ga. Aug. 30, 2024) (quoting Stone Tech. (HK) Co., Ltd. v. GlobalGeeks, Inc., No. 20-CV-23251, 2020 WL 6334409, at *3 (S.D. Fla. Oct. 29, 2020) (quotation marks omitted)).  "Bad faith might be shown when, for example, 'a plaintiff withholds his true position from his opponent, especially when done for some ulterior purpose[.]'" Id.

Here, Liberty sufficiently explains that its claim against FNMN is not limited to conduct alleged to have occurred before FNMN was formed but includes conduct on the part of FNMN that allegedly occurred after its formation. Liberty does not appear to have an ulterior purpose such as "retribution" or to obtain a tactical advantage.  Instead, it presents a straight-forward claim against FNMN for its alleged conduct.  Thus, Liberty has not acted in bad faith by seeking leave to amend.

B. Futile

Since futility is a factor for the Court to consider, it "may deny leave to amend a

4

complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." Christman v. Walsh, 416 Fed. Appx. 841, 844 (11th Cir. 2011); Hatcher v. Alabama Dep't of Human Services, 747 Fed. Appx. 778 (11th Cir. Aug. 29, 2018) ("'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile,' such as 'when the complaint as amended is still subject to dismissal'....") (citations omitted).

To reach a decision, the Court must accept as true the well-pleaded factual allegations in the proposed amended complaint and construe them in the light most favorable to Liberty. Estate of Faull by Jacobus v. McAfee, 727 Fed. Appx. 548, 549 (11th Cir. 2018) (citing Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1092 n.2, 1093-94 (11th Cir. 2017)).  The Eleventh Circuit has explained as follows:

> "To state a claim for relief, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " … In assessing whether a complaint states a plausible claim, courts may consider documents attached to the complaint as part of the complaint. …  A claim is facially plausible when the plaintiff pleads sufficient facts from which the district court may reasonably infer that the defendant is liable for the alleged misconduct. This standard requires that the plaintiff do more than "tender[ ] naked assertion[s] devoid of further factual enhancement" or plead facts that are "merely consistent with a defendant's liability." … Nevertheless, a plaintiff "need not prove his case on the pleadings" in order to state a claim for relief, and a district court may not reject a well-pleaded complaint "simply because it strikes a savvy judge that actual proof of those facts is improbable."

Estate of Faull by Jacobus, 727 Fed. Appx. at 549 (citations omitted).

Gann argues again that FNMN was not formed until March 2025; therefore, it could not have engaged in tortious interference before October 2024, when the original Complaint was filed, because it did not exist.  Gann argues that allowing the claim against FNMN for conduct that occurred before it was formed would be futile.

Liberty again explains that the original Complaint alleged that Gann solicited its "employer or worksite customers", but now the proposed First Amended Complaint expands to allege that Gann and FNMN solicited not only Liberty's "employer or worksite customers" but also "their employees" (doc. 40, p. 3-4). Liberty explains: "This means that even though Gann may have originally solicited some of Liberty's customers (i.e., the policyholders) before FNMN was formed, the individuals employed by those businesses (i.e., the insureds) were solicited later" by Gann and FNMN (Id.). Liberty argues that allowing the amendment would not be futile.

Under Alabama law,

> [t]he essential elements of the tort of intentional interference with contractual or business relations are: (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." Ex parte Hugine, 256 So. 3d at 60 (internal quotes omitted). "Stranger" is equivalent to "interloper, or meddler." Waddell & Reed, Inc. v. United Investors Life Insurance Co., 875 So. 2d 1143, 1157 (Ala. 2003) (internal quotes omitted).[ ] A "stranger" is equivalent to a "third party," which is the opposite of a "party in interest" to the relationship. Id. at 1154.

68V BTR Holdings, LLC v. City of Fairhope, 2024 WL 3049454, at *3 (S.D. Ala. June 18, 2024) (addressing a claim for intentional interference with vested rights) (footnote 4 omitted).

Here, Liberty has pled sufficient facts, construed in the light most favorable to Liberty, to state a claim for relief that is plausible on its face. Liberty has pled that Gann and FNMN knew of the existence of protectible business relationships and contracts between Liberty and its customers because of Gann's former contract with Liberty and imputation of Gann's knowledge to FNMN. Liberty has pled that Gann and FNMN are "strangers" to those relationships and contracts,[1] and that they intentionally interfered with those relationships, despite knowledge of

---

[1] Liberty alleges that FNMN is a "stranger" to "all" of Liberty's business relationships (Continued)

Gann's non-solicitation agreement, by soliciting the business of Liberty's worksite program employers, employees, and insureds, etc. (doc. 32-1, p. 11-13). Thus, allowing Liberty to amend its Complaint would not be futile. Gann's argument that FNMN could not have solicited Liberty's policyholders, etc., before it was formed, may be addressed in a motion to dismiss, or on motion for summary judgment.

III. Conclusion

Since the Court has not ascertained any substantial reason to deny Liberty's motion, the interests of justice indicate that it should be granted. See Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 757 (11th Cir. 1985) ("There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment").

**DONE** and **ORDERED** this 14th day of October 2025.

                                            **s / Kristi K DuBose**
                                            **KRISTI K. DuBOSE**
                                            **UNITED STATES DISTRICT JUDGE**

---

and contracts and that Gann is a "stranger" to "business relationships and contracts with, at a minimum, [Liberty's] worksite customers' employees who were not signed up for a policy underwritten by [Liberty] while Gann was contracted" and Liberty's "insureds whose policies were sold by other agents before Gann terminated his agency contract" (doc. 32-1, p. 12).