**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LIBERTY NATIONAL LIFE<br>INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV. A. NO. 24-384-KD-MU |
| | ) | |
| JERRY TANNER GANN, and | ) | |
| FNMN LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This action is before the Court on the Joint Motion for Entry of Agreed Permanent Injunction against Defendant Jerry Tanner Gann, (doc. 53), and the Joint Motion for Entry of Agreed Permanent Injunction against Defendant FNMN LLC, (doc. 54). Upon consideration, and for the reasons stated herein, the Motions are **DENIED**.

## I.      Procedural History

On October 16, 2025, Plaintiff Liberty National Life Insurance Company ("Liberty") filed its Amended Complaint against Defendants Jerry Tanner Gann ("Gann") and FNMN LLC ("FNMN"). [1] Liberty is an insurance company that provides life insurance and supplemental health insurance nationwide. [2] (Doc. 43 at p. 1). Liberty is domiciled in Nebraska, and its principal place of business is in McKinney, Texas. (Id.). Liberty operates as a subsidiary division of Globe Life in McKinney, Texas although it was founded originally in Alabama. (Id. at p. 4).

Liberty contracted Gann as an Independent Agency Director from April of 2022 to May of 2024. (Id.). Pursuant to their agreement, Gann was an agent of Liberty and paid by

---

[1] These facts are taken from the Amended Complaint, (doc. 43), and should not be construed as findings of fact by the Court.
[2] Gann founded FNMN LLC on March 31, 2025. (Doc. 43 at p. 2). Gann is the only member of FNMN. (Id.).

1

commission. (Id.). Gann is currently a citizen of Alabama and resides in Daphne, Alabama. (Id. at p. 1, 4).  As an Independent Agency Director, Gann "had access to and received proprietary information of [Liberty], including information about policies issued by the company, as well as about the company's policyholders, prospects, and employers of policyholders."  (Id. at p. 4). He also developed close relationships with Liberty policyholders and their employers on behalf of Liberty. (Id.).

Under the Agreement between Gann and Liberty, governed by Texas law, Gann agreed that for two years after leaving employment with Liberty, he would not directly or indirectly:

> b) sell, or attempt to sell, any form of accident and health or life insurance, or annuities, issued by any other company to or covering any of the Company's policyholders; (c) induce, or attempt to induce, any of the Company's policyholders to cancel, lapse or fail to renew their policies with the Company; [or] (d) solicit accident and health or life insurance, or annuity business from any of Company's worksite customers, including but not limited to employers . . . with whom the Independent Agency Director [Gann] had material contact on behalf of the Company during the last two (2) years of the Independent Agency Director's relationship with the Company. . . .

(Id. at p. 5). The Agreement provided that if Gann violated these terms, Liberty would be entitled to declaratory and injunctive relief, and

> monetary relief representing 200% of the annualized premium of any policy Gann replaced or caused not to renew in violation of his contractual obligation… in any successful action by LNL to enforce the non-solicitation provisions referenced above, Gann would be liable for legal fees and costs incurred by the Company in relation to such action. All such remedies are, under the Agreement, in addition to, and not in lieu of, any other remedy or recourse to which LNL may be entitled.

(Id.).

Liberty claims that since Gann resigned in May 2024, he has solicited policyholders and employer customers of Liberty in violation of their Agreement. (Id.). Liberty claims that in some instances, Gann would approach a Liberty employer or worksite customer with the "Globe Life" business card, misrepresenting himself in order to solicit the customer or employer, and replace

the Liberty coverage with coverage from a competing carrier. (Id. at p. 6). In sum, Liberty alleges Gann breached their Agreement and used his knowledge gained by working for Liberty to solicit and gain customers in his business after leaving Liberty. (Id. at p. 6).

Liberty brings one claim of breach of contract and one claim under the Lanham Act against Gann, and one claim of tortious interference against Gann and FNMN. (Doc. 43). On January 21, 2026, the parties filed a Joint Motion for Entry of Agreed Permanent Injunction against Gann, (doc. 53), and a Joint Motion for Entry of Agreed Permanent Injunction against FNMN,  (doc. 54).

## II.    Analysis

In their Joint Motions, the parties inform the Court that they have reached a settlement agreement which is contingent on the Court entering the proposed Order granting the agreed permanent injunctions on Gann and FNMN, Inc.. Liberty seeks to enjoin and restrain Gann and FNMN for two years from:

a.  Directly or indirectly communicating, divulging, or otherwise disclosing to any person, firm, corporation, or business entity any confidential information of Liberty (including but not limited to information regarding policies issued by Liberty and Liberty policyholders[3] and prospects).

b.  Directly and indirectly selling—or attempting to sell—any form of accident and health or life insurance or annuities (that Liberty currently offers, including any form of accident and health or life insurance or annuities that Liberty currently offers and that is the same or substantially similar to another company's policy), to or covering any of Liberty's policyholders;

c.   Directly and indirectly inducing—or attempting to induce—any of Liberty's policyholders to cancel, lapse, or fail to renew their policies with Liberty;

---

[3] "As used herein, the term "policyholders" shall include any person or entity insured by a policy issued by or any of its affiliate companies (a) to whom any agent, employee, owner, manager, or member of FNMN sold an insurance policy, (b) with whom any agent, employee, owner, manager, or member of FNMN had material contact on behalf of Liberty, and (c) about whom any agent, employee, owner, manager, or member of FNMN had access to information while licensed with Liberty." (Doc. 54-1 at p. 2, fn. 1)

"As used herein, the term "policyholders" shall include any person or entity insured by a policy issued by Liberty or any of its affiliate companies (a) to whom Gann sold an insurance policy, (b) with whom Gann had material contact on behalf of Liberty, and (c) about whom Gann had access to information while licensed with Liberty." (Doc. 53-1 at p. 2, fn. 1)

    d.   Directly and indirectly soliciting accident and health or life insurance, or annuity business from any of Liberty's worksite customers (including but not limited to employers, associations, and Chambers of Commerce as well as their employees) with whom any agent, employee, owner, manager, or member of FNMN [or Gann] had contact on behalf of Liberty and/or about whom any agent, employee, owner, manager, or member of FNMN had access to information while licensed with Liberty (both existing customers of Liberty and prospective customers of Liberty);

    e.   Directly or indirectly inducing—or attempting to induce—any of Liberty's agents, managers, clerical staff, or employees to (i) terminate their relationship with Liberty or (ii) sell accident and health or life insurance, or annuities for any other company.

(Doc. 54-1 at p. 2-3, doc. 53-1 at p. 2-3) (proposed orders) (bracketed text added). Liberty seeks to have this permanent injunction apply to Gann and all persons working in concert or participating with FNMN, and for those people to cease and desist immediately from any actions described above. (Id. at p. 4).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citation omitted). In order for permanent injunctive relief to be granted, a plaintiff must prove:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. Although Liberty contends that it has met the four-factor standard for a permanent injunction, see Doc. 54-1 at p. 2-3, doc. 53-1 at p. 2-3 (proposed orders), Liberty has not offered any evidence that shows any irreparable harm suffered or that monetary damages are an inadequate remedy. Therefore, the standard for granting a permanent injunction has not been met.

Further, the parties seek the Court's retention of jurisdiction to enforce the agreement. (Doc. 54-1 at p. 6, doc. 53-1 at p. 6) (proposed orders).  The Court enters orders retaining jurisdiction over settlement agreements only for exceptional reasons and not as a matter of

course. See Goldsby v. Renosol Seating, LLC, 294 F.R.D. 649, 654 (S.D. Ala. 2013) ("As a general rule, this Court does not retain jurisdiction to enforce the terms of any settlement agreement."); SOUTHEASTERN HISPANIC REGION OF THE CHURCH OF GOD OF PROPHECY, INC., Plaintiff, v. CHURCH MUTUAL INSURANCE COMPANY S. I., Defendant., No. 6:21-CV-933-CEM-EJK, 2023 WL 12237865 (M.D. Fla. Sept. 6, 2023) ("The decision to retain jurisdiction to enforce a settlement agreement is within the Court's discretion." (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994)); Access for the Disabled, Inc. v. Shiv Shraddha, LLC, 507 F. App'x 845 (11th Cir. 2013) (affirming the District Court's Order declining "to retain jurisdiction to enforce the terms of the settlement agreement…"). Here, settlement is a private matter between the parties. "Even if all of the litigants were in accord, it does not follow that the federal court must do their bidding." League of United Latin Am. Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 845 (5th Cir. 1993). "[J]ust because the settlement agreement was binding upon the parties does not mean it was binding on the district court." Stovall v. City of Cocoa, Fla., 117 F.3d 1238, 1242 (11th Cir. 1997) (citing League of United Latin Am. Citizens, Council No. 4334 v. Clements).

## III.    Conclusion

For the reasons stated above, the Joint Motions for Permanent Injunction, (docs. 53, 54), are **DENIED**.

**DONE** and **ORDERED** this **21st day** of **April 2026.**

> **s/ Kristi K. DuBose**
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**

5